## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **THERESA COLLINS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.: 3:24 cv 01203 (AWT)** |
| | : | |
| **vs.** | : | |
| | : | |
| **APPLEGREEN CT TRAVEL** | : | |
| **PLAZAS, LLC,** | : | |
| | : | |
| **Defendant.** | : | **November 25, 2024** |

### PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, in the above-entitled action, by and through her attorney, James V. Sabatini, Esquire, objects to defendant's Motion to Dismiss. Plaintiff has pled legally viable claims under Title VII and the Connecticut Fair Employment Practices Act (CFEPA).

Plaintiff attaches a Memorandum of Law in support of this Objection.

Respectfully Submitted,


By /s/ James V. Sabatini
    James V. Sabatini, Esquire   CT 19899
    Sabatini and Associates, LLC
    One Market Square
    Newington, CT  06111
    Tel. No.:  860-667-0839
    Fax No.:  860-667-0867
    e-mail:  jsabatini@sabatinilaw.com
           sa@sabatinilaw.com

    Attorney for Plaintiff


## <u>ELECTRONIC CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ James V. Sabatini
    James V. Sabatini

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **THERESA COLLINS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.:  3:24 cv 01203 (AWT)** |
| | : | |
| **vs.** | : | |
| | : | |
| **APPLEGREEN CT TRAVEL** | : | |
| **PLAZAS, LLC,** | : | |
| | : | |
| **Defendant.** | : | **November 25, 2024** |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO <u>MOTION TO DISMISS</u>

### I.     INTRODUCTION

Plaintiff brings the following claims: (1) Count One -  sex harassment in violation of CFEPA; (2) Count Two – retaliation in violation of Title VII; (3) Count Three – gender discrimination in violation of Title VII; (4) Count Four – gender discrimination in violation of CFEPA; (5) Count Five – retaliation in violation of CFEPA; and (6) Count Six - sex harassment in violation of CFEPA.

### II.     PROCEDURAL HISTORY

On March 28 2023, plaintiff filed her administrative complaint against the defendant with the Connecticut Commission on Human Rights and Opportunities (CHRO) and with the Equal Employment Opportunities Commission (EEOC).

On April 19, 20204, plaintiff received a release of jurisdiction from the CHRO.  On May 3, 2024, plaintiff received a right to sue letter from the EEOC.

On July 16, 2024, plaintiff filed her Complaint. On September 26, 2024, defendant filed a Motion to Dismiss.

## III.    FACTS

At the Motion to Dismiss stage, all facts set forth in the Complaint are presumed true. All reasonable inferences are to be drawn based upon the facts alleged and viewed in favor of the plaintiff.

### A.    Background

Defendant operates a service/travel plaza located at Route 395 Northbound Plainfield, Connecticut 06374. (Complaint ¶11) A Dunkin Donuts store operates at defendant's service/travel plaza located at Route 395 Northbound Plainfield, Connecticut 06374. (¶12) A Mobil Mart operates at defendant's service/travel plaza located at Route 395 Northbound Plainfield, Connecticut 06374. (¶13)

Defendant hired plaintiff on or about April 6, 2022. (¶14) Plaintiff's job position was Associate. She worked for the defendant at the Dunkin Donuts at 395 Northbound Plainfield, Connecticut 06374.  (¶15)

Plaintiff was qualified for the job. (¶16) Plaintiff is female. (¶17)

### C.    Sex Harassment

Plaintiff was subjected to a hostile work environment. (¶18) For five (5) months, plaintiff was subjected to abuse and harassment on account of her gender. (¶19)

The harasser was David Dixon. (¶20) David Dixon was the manager of the Mobil Mart.  The Dunkin Donuts was inside the same building as Mobil Mart. (¶21)

Dixon subjected plaintiff to the following abusive behavior: inappropriate touching; throwing of objects; calling her a f-cking scumbag; threatening to physically hurt her; telling a co-worker that he was going to wait by her car and beat her ass; loudly making rude and insulting comments. (¶22)

### D.    Reporting the Harassment

Plaintiff complained about the harassment. (¶23) Plaintiff informed her manager of the harassment. (¶24) Plaintiff informed her district manager of the harassment. (¶25) Plaintiff notified the owner of Mobil Mart of the harassment.  (¶26) Plaintiff  notified the owner of the Plaza of the harassment. (¶27)

Nothing was done and the harassment continued. (¶28)

### E.    Termination

Defendant terminated plaintiff's employment on or about September 30, 2022. (¶29)

Defendant told plaintiff that she was terminated because her deposit was $100 short. (¶30)

Plaintiff 's drawer had never been short. (¶31)

### F.    Similarly Situated Employees

Other similarly situated employees had discrepancies in their drawers and deposits and were not terminated. (¶32)

Another similarly situated employee was a repeated no call-no show and was not terminated. (¶33)

## IV.    LAW AND ARGUMENT

### A.    Rule 12(b)(6) Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure assesses the legal sufficiency of the complaint.  *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 775, 779 (2d Cir.1984).  A motion to dismiss is properly granted only when "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations."  *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 92d Cir.1985). The purpose of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence that might be offered in support of the claim. *Geisler v. Petrocelli*, 616 F.2d 639, 640 (2d Cir. 1980).   "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Id.*  When considering a motion to dismiss, all facts alleged in the complaint are presumed to be true and are considered in the light most favorable to the non-movant.  *Williams v. Avco Lycoming*, 755 F.Supp. 47, 49 (D.Conn.1991).  All reasonable inferences are to be drawn

based upon the facts alleged and viewed in favor of the pleader. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gerrity v. R.J. Reynolds Tobacco Co*., 399 F.Supp.2d 87, 90 (D.Conn.2005), *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)(footnote omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. *Id*., *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

**B.    Counts One and Six Asserting Sex Harassment Claims Under Title VII and CFEPA**

The Title VII and CFEPA prohibit sex harassment in the workplace. C.G.S. Section 46a–60(b) specifically provides, in relevant part: "It shall be a discriminatory practice in violation of this section ... (8) For an employer, by the employer or the employer's agent ... to harass any employee, person seeking employment or member on the basis of sex. CFEPA defines sexual harassment. "As used in this subdivision, 'sexual harassment' means any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C)

such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment;". C.G.S. §46a–60(b)(8).

"To establish a claim of hostile work environment, the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment ... [I]n order to be actionable ... a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so ... Whether an environment is sufficiently hostile or abusive [is determined] by looking at all the circumstances." *Brittell v. Dept. of Correction*, 247 Conn. 148, 166–67, 717 A.2d 1254 (1998)

Plaintiff must prove, by a preponderance of the evidence, each of the following elements:

1.     that the she was subjected to unwelcome harassment, ridicule or other abusive conduct;

2.     that the abusive conduct was motivated, at least in part, by her sex;

3.     that the abusive conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment; and

4.     that the defendant's management employees knew, or should have known of the abusive conduct.  See *Brittell v. Dept. of Correction*, 247 Conn. 148, 166–67, 717 A.2d

1254 (1998), citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126

L.Ed.2d 295 (1993); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct.

998, 1001, 140 L.Ed.2d 201 (1998).

### 1.    Subjected to Abusive Misconduct

Plaintiff was subjected to abusive misconduct. Plaintiff was subjected to

inappropriate touching; had objects thrown at her throwing of objects; was called a f-cking

scumbag; was threatened with physical harm; was told by the harasser that he was going to

wait by her car and beat her ass; and was subjected rude and insulting comments.

The abuse occurred over the course of the plaintiff's five (5) months of employment.

Any reasonable person would find Dixon's remarks and behavior to be abusive.

The abuse was unwelcomed.  Plaintiff reported the harassment to the defendant.

### 2.    Abusive Conduct Motivated by Sex

The abusive conduct was motivated, at least in part, by sex.  It is a long-established

principle of Title VII law that a hostile environment can be established even if the conduct

complained of is not overtly sexual in nature. "Facially neutral incidents may [also] be

included ... among the "totality of the circumstances" that courts consider in any hostile

work environment claim, so long as a reasonable fact-finder could conclude that they were,

in fact, based on sex. But this requires some circumstantial or other basis for inferring that

incidents sex-neutral on their face were in fact discriminatory." *Alfano v. Costello*, 294 F.3d

365, 378 (2d Cir. 2002); *Williams v. General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999);

*Spain v. Gallegos*, 26 F.3d 439 (3rd Cir., 1994); *Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010 (8th Cir., 1988); *E.E.O.C. v. National Educ. Ass'n, Alaska*, 422 F.3d 840 (9th Cir. 2005); *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093 (10th Cir.1999).  "Courts have found this prong to be satisfied when the same individual is accused of multiple acts of harassment, some overtly sexual and some that appear to be facially neutral." See *Raniola v. Bratton*, 243 F.3d 610, 622-23 (2d Cir. 2001); *Howley v. Town of Stratford*, 217 F.3d 141, 155-56 (2d Cir. 2000).

The harassment does not have to be motivated by sexual desire, but can be motivated by hostility to members of a particular sex. See *Oncale*, 523 U.S. at 80, 118 S.Ct. 998 ("A trier of fact might reasonably find such [same-sex] discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace."). It is well settled that verbal abuse, violence, or physical aggression may constitute sexual harassment and that such abuse need to be explicitly sexual in nature. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1378 (8th Cir.1996).

A male threatening to violently assault a female is persuasive evidence of a real hostility towards the opposite sex.  Combining the repeated threats of violence with the offensive insults ("scumbag" refers to a used condom) and the unwelcomed physical establishes an inference that the abuse was motivated, at least in part, by sex.

### 3.    Severe or Pervasive

A sexually objectionable environment is "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).  Once there is evidence of improper conduct and subjective offense, the question of whether the conduct rose to a persuasive level of abuse is largely one for the jury. See *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir.1998); see also *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir.1999) ("the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact' ")

In determining whether a work environment is sufficiently severe or pervasive to alter the terms or conditions of employment, we must look at the totality of the circumstances, including factors such as " 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367)

The Second Circuit distinguishes between "uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures" and "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers," the latter of which does not support a viable claim. *Redd v. New York Div. of Parole*, 678 F.3d 166, 177 (2d Cir.2012)

Plaintiff perceived the workplace to be hostile.  She complained about it to her employer.  Plaintiff's allegations, if found true by a jury, are sufficient to permit a finding that the cumulative effect of the harasser's conduct was sufficiently severe or pervasive to create a hostile work environment based on sex.

### 4.    Non-Employee Harasser

"It is well established that employers may be liable for failing to remedy the harassment of employees by third parties who create a hostile work environment." *Beckford v. Dep't of Corrs.*, 605 F.3d 951, 957 (11th Cir.2010).

Defendant argues that plaintiff failed to plead that it was negligent in monitoring its workplace and/or responding to plaintiff's report of harassment. The argument is misplaced.

Plaintiff reported the harassment.  Defendant did nothing about the harassment.  The harassment continued. These basic facts pled in the Complaint establish defendant's negligence.

### 5.    Magical Words Are Not Required

Courts have noted that sexual harassment complaints need not include "magic words" such as "sex" or "sexual" to be effective. See, e.g., *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C.Cir.2006) ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition."); *Olson v. Lowe's Home Ctrs. Inc.*, 130 Fed.Appx. 380, 391 n. 22 (11th Cir.2005) (unpublished) ("There is no

magic word requirement. That is, the employee need not label the events 'sexual harassment' in order to place an employer on notice of the offending behavior.").

Defendant complains that plaintiff did specifically aver that she used words such as "sexual harassment" when reporting the abuse.  Plaintiff was not required to do so.  At the motion to dismiss stage, all the allegations in the complaint are accepted as true, as well as reasonable inferences construed in the light most favorable to the plaintiff.  Here, plaintiff asserts that she was employed by the defendant for five (5) months.  She asserts that she harassed for the duration of her employment.  Plaintiff asserts the abusive conduct. Plaintiff asserts that she informed her manager and her district manager of the abusive conduct.  It is reasonable to infer that the harassment plaintiff reported to defendant's management is the harassment described in her Complaint.

Plaintiff has pled legally viable claims of sex harassment under Title VI and the CFEPA.  Defendant's Motion to Dismiss should be denied.

## C.    Gender Discrimination Claim

Counts Three and Four assert gender discrimination under Title and CFEPA. Defendant moves to dismiss the gender discrimination claims on the basis that the Complaint fails to "connect her termination to a discriminatory motive".

"Determining the propriety of the dismissal of an employment discrimination complaint under Rule 12(b)(6) requires assessment of the interplay among several Supreme Court precedents. *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir.2015), citing

13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and three subsequent Supreme Court rulings clarifying it, established the nature of a prima facie case of discrimination under Title VII. *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), specifically addressed the requirements for pleading such a case. And *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), later asserted general pleading requirements (not specifically addressed to discrimination cases), in arguable tension with the holding of *Swierkiewicz*."

"*McDonnell Douglas*, together with *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), established that the requirements of a prima facie case for a plaintiff alleging employment discrimination change as the case progresses." *Id.* at 307.

"However, in the first phase of the case, the prima facie requirements are relaxed. Reasoning that fairness required that the plaintiff be protected from early-stage dismissal for lack of evidence demonstrating the employer's discriminatory motivation before the employer set forth its reasons for the adverse action it took against the plaintiff, the Supreme Court ruled that, in the initial phase of the case, the plaintiff can establish a prima facie case without evidence sufficient to show discriminatory motivation." Id., *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089 ("The prima facie case ...

14

eliminates the most common nondiscriminatory reasons for the plaintiff's rejection.... [W]e presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." (internal quotation marks omitted)). If the plaintiff can show (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation, such a showing will raise a temporary "presumption" of discriminatory motivation, shifting the burden of production to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff." Id. at 307-08, citing *Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089; *St. Mary's Honor Ctr*., 509 U.S. at 506–07, 113 S.Ct. 2742.

In *Littlejohn*, the Second Circuit wrestled with the question of whether "*Iqbal's* requirement applies to Title VII complaints falling under the *McDonnell Douglas* framework." *Id.* at 309. The Second Circuit determined that "*Iqbal's* requirement applies to Title VII complaints of employment discrimination, but does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet. To the same extent that the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be pleaded under *Iqbal*." *Id*. at 310.

"The *Iqbal* requirement is for facts supporting 'plausibility'." The Supreme Court explained that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 310-11, citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "The question we face is what, in the Title VII context, must be plausibly supported by factual allegations when the plaintiff does not have direct evidence of discriminatory intent at the outset. Answering this question requires attention to the shifting content of the prima facie requirements in a Title VII employment discrimination suit. Recapitulating what we have spelled out above, while the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not need substantial evidence of discriminatory intent. If she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the prima facie requirements and a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089; *St. Mary's Honor Ctr.*, 509 U.S. at 506–07, 113 S.Ct. 2742. At this stage, a plaintiff seeking to defeat a defendant's motion for summary judgment would not need evidence sufficient to sustain her ultimate burden of showing

discriminatory motivation, but could get by with the benefit of the presumption if she has shown evidence of the factors entitling her to the presumption." *Id.* at 310-311.

"The discrimination complaint, by definition, occurs in the first stage of the litigation." *Id*. at 311. "Therefore, the complaint also benefits from the temporary presumption and must be viewed in light of the plaintiff's minimal burden to show discriminatory intent. The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification." *Id.*, Cf. *Swierkiewicz*, 534 U.S. at 511–12, 122 S.Ct. 992 ("It ... seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.").

To establish a *prima facie* case of gender discrimination plaintiff must prove: The four elements of a prima facie case are: (1) member of a protected class; (2) qualified for the job; (3) suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Plaintiff is a member of a protected class. Gender is a protected class under CFEPA and Title VII.

Plaintiff is qualified for the job. Plaintiff asserted that she was "qualified". Defendant does not move to dismiss based on the "qualified" issue.

Plaintiff suffered an adverse employment action. Plaintiff was terminated.

The fourth element is that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. See generally *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Norris v. Metro-North Commuter R.R. Co.*, 522 F.Supp.2d 402, 408 (D. Conn.2006). It is well settled that the burden of satisfying the prima facie case in employment discrimination cases is "minimal." *See e.g.*, *McGuiness v. Lincoln Hall*, 263 F.3d 49, 52 (2d Cir.2001).

Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decision-making processes and to the influences behind the actions taken with respect to the individual plaintiff. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 392 (6th Cir.2009); *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1342 (1st Cir. 1988) ("[t]he inquiry into a corporation's motives need not be artificially limited to the particular officer who carried out the action"). *Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 546 (3rd Cir. 1992) ("such evidence [of a discriminatory atmosphere] does tend to add 'color' to the employer's decision-making processes and to the influences behind the actions taken with respect to the individual plaintiff") *Sweeney v. Trustees of Keene State College*, 604 F.2d 106 (1st Cir. 1979) ("evidence of [a general atmosphere of discrimination] may be considered along with any other evidence bearing on motive . . .

showing that the defendants' reasons are pretexts") *Clark v. Hess Trucking Co*., 879 F.Supp. 524, 532 (W.D.Pa. 1995) (recognizing that "proof of a discriminatory atmosphere may be relevant in proving pretext").

In this case, defendant was on notice that its employee, the plaintiff, was being subjected to a hostile work environment on account of her gender. Defendant did not remedy the problem. Instead, the harassment continued. An employer that tolerates harassment on the basis of sex serves as circumstantial evidence of individualized gender discrimination.

As stated previously, requiring a plaintiff at the pleading stage to preemptively anticipate defendant's proffered legitimate, non-discriminatory business reason for the materially adverse employment action is at odds with the *McDonnell-Douglas* burden shifting framework**.** The plaintiff cannot reasonably be required to allege more facts in the Complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification. *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir.2015). In any event, plaintiff has asserted sufficient evidence of pretext.

Defendant cited a shortfall in the cash deposits as justification for termination. The cash deposits come from the cash register drawers. Plaintiff asserts that her cash drawer was never short. Assuming that the cash deposit was short, it was not caused by the plaintiff. Blaming plaintiff for an issue that she did not create is evidence of pretext.

Plaintiff has pled legally viable claims of gender discrimination under Title VII and CFEPA.  Defendant's Motion to Dismiss should be denied.

### E.    Retaliation Claims

Plaintiff asserts retaliation claims under Title VII and CFEPA.  The legal elements of a retaliation claim are:

1. SHE complained about discrimination (harassment is a form of discrimination);

2. Defendant was aware of her complaint;

3. Defendant took an action that a reasonable employee would have found materially adverse; and

4. That the retaliatory motive played a part in defendant's materially adverse employment action. See e.g. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir.2006).

Plaintiff complained about sex harassment.  Defendant was notified of her complaint.

A plaintiff need only prove that her complaint "was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful," not that the underlying complaint of discrimination had merit. *Rivera v. Rochester Genesee Regional Transp. Authority*, 702 F.3d 685, 698 (2d Cir.2012).  Plaintiff believed that she was being sexually harassed which is why she reported it.

Defendant is mistaken when arguing that plaintiff was required to use terms like "sexual harassment" in order to be engaged in protected activity. An employee need not use

magic words to bring his speech with CFEPA's anti-retaliation protections. See *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 882, 885 (7th Cir.1998)(An employee, of course, need not use the words "pregnancy discrimination" to bring her speech within Title VII's retaliation protections.).  It is an issue of fact as to whether the contents of plaintiff's complaints to the defendant put the defendant on notice that he was complaining about sex harassment.

"A causal connection may be established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by a defendant." *Marchand v. Backus Hospital*, 2013 WL 1800823 (Conn.Super.2013), quoting *Martin v. Westport*, 108 Conn.App. 710, 719 (2008). "[T]he inquiry into whether temporal proximity establishes causation is factual in nature. There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between [protected activity] and an allegedly retaliatory action." (Internal quotation marks omitted.) *Ayantola v. Board of Trustees of Technical Colleges*, 116 Conn.App. 531, 539, 976 A.2d 784 (2009).  Connecticut courts have generally been flexible in their interpretation of temporal proximity. See, e.g., *Simoes v. Olin Corp.*, Superior Court, judicial district of Waterbury, Docket No. CV 06 6000206 (June 4, 2010, Cremins, J.) (50 Conn. L. Rptr. 26, 28) (holding that "[w]hether an eight month lapse of time between the

adverse action taken by the defendant, i.e. the plaintiff's termination, and the filing of the plaintiff's workers' compensation claim establishes the causal connection necessary to establish the plaintiff's prima facie case is an issue of material fact to be decided by the fact finder"); *Li v. Canberra Industries*, 134 Conn.App. 448, 457, 39 A.3d 789 (2012) (holding that a genuine issue of material fact exists as to whether employee's complaint to supervisor that she would refuse to engage in practice she believed was illegal was cause of employee's termination several months later); *Oquendo v. Margaritaville of Connecticut, LLC*, Superior Court, judicial district of New London, Docket No. 11 6007189 (June 24, 2011, Martin, J.) (holding, in part, that the plaintiff has established a cause of action pursuant to § 31–290a, where there is a six-month gap between the protected activity and the adverse employment action, and that the count is not vulnerable to a motion to strike); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights office provided prima facie evidence of a causal connection between protected activity and retaliation.).

Here, defendant employed plaintiff for five (5) months.  Thus, each and every time plaintiff reported the harassment, the reporting took place less than 5 months before the termination.

The timing evidence establishes an inference of retaliatory intent.  Or at the motion to dismiss stage, the timing evidence establishes a plausibility of an inference of retaliatory intent.

As stated previously, requiring a plaintiff at the pleading stage to preemptively anticipate defendant's proffered legitimate, non-retaliatory business reason for the materially adverse employment action is at odds with the *McDonnell-Douglas* burden shifting framework**.**

The pretext evidence cited to herein support of the discrimination claim is equally supportive of the retaliation claim.  Plaintiff has pled a legally viable retaliation claim under Title VII and CFEPA.  Defendant's Motion to Dismiss should be denied.

## V.    CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss should be denied.

By /s/ James V. Sabatini
James V. Sabatini, Esquire     CT 19899
Sabatini and Associates, LLC
One Market Square
Newington, CT  06111
Tel. No.:  860-667-0839
Fax No.:  860-667-0867
e-mail:  jsabatini@sabatinilaw.com

Attorney for Plaintiff