UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------- x
THERESA COLLINS,                 :
                                 :
          Plaintiff,             :
                                 :
v.                               :
                                 :  Civil No. 3:24-cv-1203 (AWT)
APPLEGREEN CT TRAVEL PLAZAS,     :
LLC,                             :
                                 :
          Defendant.             :
                                 :
-------------------------------- x
```

## RULING ON MOTION TO DISMISS

Plaintiff Theresa Collins has filed a six-count Amended Complaint against defendant Applegreen CT Travel Plazas, LLC ("Applegreen"), bringing a claim for sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count One), a claim for retaliation in violation of Title VII (Count Two), a claim for gender discrimination in violation of Title VII (Count Three), a claim for gender discrimination in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 ("CFEPA") (Count Four), a claim for retaliation in violation of CFEPA (Count Five), and a claim for sexual harassment in violation of CFEPA (Count Six).

Defendant Applegreen moves to dismiss the Amended Complaint (ECF No. 26) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For

-1-

the reasons below, the defendant's motion to dismiss is being granted.

## I.    FACTUAL ALLEGATIONS

The court "must accept [the complaint] as true for the purposes of testing its sufficiency." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997).

Plaintiff Theresa Collins began working at defendant Applegreen's service plaza in Plainfield, Connecticut on or about April 6, 2022. She worked at the Dunkin Donuts location inside the service plaza as an Associate. The service plaza is "one large open space," where "[t]here are no walls separating the Dunkin Donuts store from the rest of the building." Am. Compl. ¶ 71. Also inside that service plaza was a Mobil Mart location, whose manager was David Dixon.

The Amended Complaint alleges, in general, that once plaintiff Collins began working at the Dunkin Donuts inside the service plaza, "[f]or five (5) months, plaintiff was subjected to abuse and harassment on account of her gender." Am. Compl. ¶ 19. The plaintiff alleges that "Dixon subjected plaintiff to the following abusive behavior: inappropriate touching; throwing of objects; calling her a f-cking scumbag; threatening to physically hurt her; telling a co-worker that he was going to wait by her car and beat her a[**]; loudly making rude and insulting comments." Id. ¶ 22.

"Plaintiff's first day on the job was April 6, 2022. During her first day, Dixon came up behind the plaintiff and proceeded to tug on both of her ears." Id. ¶ 39. "The tugging on the ears incident took place at the Dunkin front counter next to the swing door where the employees enter." Id. ¶ 40. "Plaintiff told Dixon to never touch her again." Id. ¶ 41.

"From April 6, 2022 through September 30, 2022, Dixon threw objects at the plaintiff," including "pens, straws, bags of chips and pastries." Id. ¶¶ 42-43. "Dixon threw these items directly at the plaintiff while she was on the clock working behind her Dunkin counter." Id. ¶ 43. There were approximately twenty-five to thirty incidents of Dixon throwing an object at the plaintiff. On one such occasion, "Dixon straightened out a coat hanger and threw it directly at plaintiff barely missing her." Id. ¶ 45.

"In May 2022, Dixon called plaintiff a 'f-cking scumbag'" "while plaintiff was working behind her Dunkin counter and waiting on a customer." Id. ¶ 46. "From April 6, 2022 through September 30, 2022, Dixon made loud, rude, insulting and abusive remarks to the plaintiff (about 25 to 30 times)." Id. ¶ 48. Dixon made these remarks "while standing against the wall directly across from the Dunkin counter while plaintiff was waiting on customers." Id. Other such remarks included: "a. 'and she plays sports . . . being this slow . . . really?' b. 'a five

-3-

year old could do a better job' [and] c. 'need help . . . want me to . . . go back there and show you how a man gets the job done.'" Id. ¶ 49. In addition, "Dixon would walk up to the Dunkin counter, take the tip jar and comment: 'you don't deserve half the tips in here.'" Id. ¶ 50.

Approximately two weeks after the "plaintiff began working for the defendant, Jennifer Dadio visited the service/travel plaza." Id. ¶ 51. (It is undisputed that Dadio is Applegreen's district manager.) "Dadio witnessed Dixon throwing an object at the Plaintiff." Id. ¶ 52. Collins "told Dadio that Dixon had touched her ears, was throwing objects at her and making comments about how allegedly slow she was with customers," and Collins "asked Dadio what could be done about Dixon's abusive behavior." Id. ¶ 53-54. Dadio told Collins to "just ignore him ... he will get bored with it and stop." Id. ¶ 55.

Kaylee Chubka was the store manager of the Dunkin Donuts and was also employed by defendant Applegreen. "Chubka witnessed Dixon's harassment of the plaintiff," including "Dixon throwing objects at plaintiff." Id. ¶ 59. Collins "reported to Chubka that Dixon was making harassing remarks." Id. ¶ 60. Collins asked Chubka "how she could contact 'upper' management so that she could report Dixon's harassment." Id. ¶ 57. Chubka told Collins "to go get a restraining order against Dixon" and "never provided the plaintiff with the contact information for upper

-4-

management." Id. ¶¶ 61-62. Collins also "called defendant's corporate phone number to report Dixon's harassment but the defendant did not respond to her calls." Id. ¶ 63. Collins "called three to four times between June and August 2022." Id.

In addition, the plaintiff "spoke to Dixon's employer at the end of August 2022 and told the owner of the Mobil Mart that Dixon had been throwing objects at her and that he had been making offensive and inappropriate remarks towards her." Id. ¶ 64. "The owner of the Mobil Mart told plaintiff that he would check the security cameras and follow up with her," but he never did. Id.

"Collen Rivera was employed by the defendant as an assistant manager" and "worked at the same Dunkin Donuts location as the plaintiff." Id. ¶ 72. "Rivera informed plaintiff that Dixon had threatened to physically hurt her. Rivera told plaintiff that Dixon stated that plaintiff should watch her back because one day he would be waiting at her car when her shift was over." Id. ¶ 73. "Dixon made this threat after learning that the plaintiff had been attempting to get help with stopping [Dixon's] abusive behavior." Id. ¶ 74.

Applegreen terminated Collins's employment on or about September 30, 2022. Applegreen "told plaintiff that she was terminated because her deposit was $100 short." Id. ¶ 30. Collins alleges that her "drawer had never been short," id. ¶

31, and further alleges that other employees had not been terminated for discrepancies in their cash drawers, see id. ¶ 32. In particular, the plaintiff points to six other Associates employed by defendant Applegreen "who did the same job as the plaintiff" and "had discrepancies in their cash drawer" but were, to plaintiff's knowledge, not terminated. Id. ¶¶ 65-66. "To plaintiff's knowledge, the other associates [who had discrepancies in their cash drawers] had not complained to management about discrimination or harassment." Id. ¶ 67. Collins also points to three other Associates employed by defendant Applegreen in the same role as Collins who had "no calls-no shows" but "were not terminated for the no calls no-shows." Id. ¶ 68-69. "[T]he Associates [with the no calls-no shows] had not complained to management about discrimination or harassment." Id. ¶ 70.

## II.   LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

-6-

cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan, 478 U.S. at 286. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (alteration in original) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Twombly, 550 U.S. at 555 (citations and internal quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch

-7-

Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). The issue on a motion to dismiss "is not whether [the] plaintiff will prevail, but whether [the plaintiff] is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## III. DISCUSSION

### A.    Sexual Harassment (Counts One and Six)

In Counts One and Six, the plaintiff brings claims for a hostile work environment, because of her sex, in violation of Title VII and CFEPA, respectively.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63 (1986) (alteration in original) (quoting 42 U.S.C. § 2000e-2(a)(1)). "The phrase 'terms, conditions, or privileges of

-8-

employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment . . . in employment,' which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, 477 U.S. at 64). "To establish a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Littlejohn v. City of New York, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting Harris, 510 U.S. at 21).

CFEPA provides, in relevant part, that "[i]t shall be a discriminatory practice in violation of this section . . . [f]or an employer . . . to harass any employee . . . on the basis of sex or gender identity or expression." Conn. Gen. Stat. § 46a-60(b)(8). CFEPA defines "sexual harassment" in relevant part as "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when . . . such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." Id. Because "Connecticut courts look to federal law for guidance when analyzing CFEPA hostile work environment claims," the court

evaluates such CFEPA claims using Title VII precedent. Martin v. Town of Westport, 558 F. Supp. 2d 228, 242 (D. Conn. 2008).

The legal standard for a claim for a hostile work environment was articulated in Patane v. Clark:

> To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex."

508 F.3d 106, 113 (2d Cir. 2007). "In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Littlejohn, 795 F.3d at 321 (quoting Harris, 510 U.S. at 21).

It is undisputed that Dixon was not an employee of defendant Applegreen. "[I]n the title VII context . . . the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a 'high degree of control over the behavior' of the non-employee, and (2) the employer's 'own negligence' permits or facilitates that non-employee's discrimination." Menaker v. Hofstra Univ., 935 F.3d 20, 38-39

-10-

(2d Cir. 2019) (quoting Summa v. Hofstra Univ., 708 F.3d 115, 124 (2d Cir. 2013)).

The plaintiff alleges that during her first day on the job, Dixon came up behind her and proceeded to tug on both of her ears. She alleges that this incident took place at the Dunkin front counter next to the swing door where employees enter. She "told Dixon to never touch her again". Am. Compl. ¶ 41. In general, "the law . . . deems unwanted touching to be a highly significant factor contributing to a hostile work environment." Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 484 (S.D.N.Y. 1999). See, e.g., Girardi v. Ferrari Express, Inc., 2023 WL 2744027, at *6 (S.D.N.Y. March 31, 2023) (finding that the plaintiff stated a claim for a hostile work environment based on a pleading including allegations that the perpetrator engaged in "suggestive, unwanted, touching of Plaintiff"); Parra v. City of White Plains, 48 F. Supp. 3d 542, 547, 552 (S.D.N.Y. 2014) (finding that the plaintiff's allegations that the defendant subjected her to unwanted sexual touching, including rubbing her hands, arms, shoulders, neck, feet, head and hair were sufficient to plead a hostile work environment); Johnson v. J. Walter Thompson U.S.A., LLC, 224 F. Supp. 3d 296, 307-08 (S.D.N.Y. 2016) (finding that the plaintiff's allegations that the defendant subjected her to unwanted sexual touching, including rubbing her shoulders and stroking her face, were

-11-

sufficient to plead a hostile work environment).

However, assuming arguendo that the plaintiff could plausibly argue to a jury that (i) Dixon would not have touched her in this way had she been a man--particularly in light of his comment about showing her "how a man gets the job done," Am. Compl. ¶ 60, and (ii) all of the other harassment and abuse described in the Amended Complaint must be viewed through the prism of that incident on her first day of work, Collins has nonetheless failed to plead a claim upon which relief can be granted. The Amended Complaint does not contain factual allegations that could establish that Applegreen exercised a "high degree of control over the behavior" of Dixon. Menaker, 935 F.3d at 39. The harassment described in the Amended Complaint took place either while Dixon and the plaintiff were both in the area in front of the Dunkin counter or while Collins was behind the Dunkin counter and Dixon was on the other side, in some instances while Dixon was standing against the wall directly across from the Dunkin counter and Collins was behind the counter waiting on customers. Nothing in the Amended Complaint suggests that Applegreen had an ability to control Dixon's behavior, and the plaintiff does not address this element in her opposition. In fact, the plaintiff herself recognized the necessity of speaking to Dixon's employer, the owner of the Mobil Mart, about Dixon's behavior.

-12-

Nor does the Amended Complaint contain factual allegations that could establish that Applegreen's negligence permitted or facilitated sexual harassment of the plaintiff by Dixon. See Menaker, 935 F.3d at 39. The Amended Complaint alleges: "Plaintiff complained about the harassment," Am. Compl. ¶ 23; "Plaintiff informed her manager of the harassment," id. ¶ 24; "Plaintiff informed her district manager of the harassment," id. ¶ 25; "Plaintiff notified the owner of Mobil Mart of the harassment," id. ¶ 26; "Plaintiff notified the owner of the Plaza of the harassment," id. ¶ 27; "Nothing was done and the harassment continued." Id. ¶ 28.

The discrimination claim against Applegreen is for sexual harassment. Applegreen cannot be negligent by permitting or facilitating sexual harassment by a non-employee if Applegreen is not aware that the type of harassment in which the non-employee is engaged is sexual harassment. What is required is not simply a hostile or abusive work environment, but a "discriminatorily hostile or abusive environment." Harris, 510 U.S. at 21. While there are numerous factual allegations that could establish that the plaintiff complained about a hostile work environment, none could show that she advised her employer that she was being subjected to sexual harassment by Dixon, nor that she even advised Dixon's employer that she was being subjected to sexual harassment. See Am. Compl. ¶ 64. Rather, she

-13-

alleges that Dixon threw an object at her "approximately 25-30 times," id. ¶ 44, and made "loud, rude, insulting and abusive remarks to the plaintiff (about 25 to 30 times)." Id. ¶ 48. She alleges that Jennifer Dadio witnessed Dixon throwing an object at the plaintiff. While the plaintiff told Dadio that Dixon had "touched her ears," this was in the context of also complaining that Dixon was throwing objects at her and making comments that she was slow with customers. Id. ¶ 53. As to Chubka, the plaintiff alleges that Chubka witnessed Dixon throwing objects at the plaintiff, as well as his comments about her being slow with customers, how a "five year old could do a better job," and how she needed help and Dixon could "go back there and show you how a man gets the job done." Id. ¶ 60. These factual allegations do not show that Collins made Applegreen aware that she was being subjected to sexual harassment so as to create a duty on the part of Applegreen to avoid permitting or facilitating sexual harassment by Dixon.

Therefore, the plaintiff's claims for sexual harassment (Counts One and Six) are being dismissed.

**B.    Gender Discrimination (Counts Three and Four)**

In Counts Three and Four, the plaintiff claims that defendant Applegreen discriminated against her on the basis of her sex when it terminated her employment, in violation of Title VII and CFEPA, respectively. She claims that Applegreen's stated

-14-

reason for terminating her employment, i.e. the deposit in her cash drawer was $100 short, was pretextual.

"Title VII prohibits an employer from 'taking an adverse employment action' against an individual 'because of such individual's race, color, religion, sex, or national origin.'" Menaker, 935 F.3d at 30 (citation omitted).

CFEPA provides, in relevant part, "[i]t shall be a discriminatory practice in violation of this section . . . [f]or an employer . . . to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . sex, gender identity or expression . . . ." Conn. Gen. Stat. § 46a-60(b)(1). Because "'[t]he Connecticut Supreme Court looks to federal precedent when interpreting and enforcing the CFEPA,' . . . [a] CFEPA sex discrimination claim is analyzed in the same manner as [a] Title VII sex discrimination claim." Kelley v. Sun Microsystems, Inc., 520 F. Supp. 2d 388, 400-01 (D. Conn. 2007) (quoting Williams v. Quebecor World Infiniti Graphics, 456 F. Supp. 2d 372, 383 (D. Conn. 2006)).

> To survive a motion to dismiss, a plaintiff need only establish "a prima facie case of sex discrimination by demonstrating that (1) [he] was within the protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." If a plaintiff successfully establishes a prima facie case, the burden shifts to the employer at the summary judgment stage "to

-15-

> articulate some legitimate, nondiscriminatory reason for the adverse employment action." Finally, if the employer carries that burden, a plaintiff must submit admissible evidence from which a finder of fact could "infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." The burden-shifting framework thus "reduces the facts needed to be pleaded under Iqbal" at the 12(b)(6) stage of a Title VII suit. A plaintiff need only allege facts that give "plausible support to a minimal inference of discriminatory motivation."

Menaker, 935 F.3d at 30 (alterations in original) (footnotes and citations omitted).

The factual allegations in the Amended Complaint do not provide plausible support to a minimal inference of discriminatory motivation, i.e. that "the adverse action occurred under circumstances giving rise to an inference of discrimination." Menaker, 935 F.3d at 30 (citation omitted). The Amended Complaint states that "[a]ny and all reasons to be proffered by the defendant to explain the termination would be a pretext to cover up unlawful discrimination and/or retaliation," Am. Compl. ¶ 34, but such a "naked assertion[] devoid of . . . factual enhancement," Iqbal, 556 U.S. at 678 (internal quotation marks omitted), does not suffice.

The Amended Complaint alleges that "[o]ther similarly situated employees had discrepancies in their drawers and deposits and were not terminated." Am. Compl. ¶ 32. "A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated

-16-

employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (citation and internal quotation marks omitted). "A plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" Id. (citation omitted). The Amended Complaint gives the names of six other Associates who had previously experienced similar discrepancies in their cash drawers but did not have their employment terminated. See Am. Compl. ¶ 65 ("Other Associates, Emily[ ](do not recall last name), Brad (do not recall last name), Austin Keanan, Dakota Lajeunese, Katherine (do not recall last name), Jordan Gonyer, employed by the defendant and who did the same job as the plaintiff, had discrepancies in their cash drawer."). However, three of the employees the plaintiff alleges were not terminated although they had cash drawer discrepancies were female, so these factual allegations actually show that Applegreen did not treat female employees less favorably than male employees. See Alcy v. Northwell Health, Inc., 2025 WL 835647, at *8 (S.D.N.Y. Mar. 14, 2025) ("[C]ourts in the Second Circuit regularly hold that the existence of similarly situated comparators in a plaintiff's protected group undermines an inference of discrimination on the basis of the protected

-17-

characteristic, even when there are other comparators outside of plaintiff's protected group."). The Amended Complaint also alleges that other Associates were not terminated for "no calls-no shows," Am. Compl. ¶ 69, but the plaintiff was not terminated for a "no call-no show."

> The plaintiff argues in her opposition that the
>
> defendant was on notice that its employee, the plaintiff, was being subjected to a hostile work environment on account of her gender. Defendant did not remedy the problem. Instead, the harassment continued. An employer that tolerates harassment on the basis of sex serves as circumstantial evidence of individualized gender discrimination.

Pl.'s Obj. to Def.'s Mot. to Dismiss (ECF No. 36) ("Pl.'s Opp'n") at 23.[1] This argument fails because, as discussed above, the factual allegations in the Amended Complaint cannot establish that the plaintiff made Applegreen aware that she was being subjected to sexual harassment.

Therefore, the plaintiff's claims for gender discrimination (Counts Three and Four) are being dismissed.

### C.    Retaliation (Counts Two and Five)

In Counts Two and Five, the plaintiff brings claims against defendant Applegreen for retaliation, in violation of Title VII and of CFEPA, respectively.

"Section 704(a) of Title VII includes an anti-retaliation

---

[1] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

provision that makes it unlawful 'for an employer to discriminate against any . . . employee[ ] . . . because [that individual] opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII investigation or proceeding." Littlejohn, 795 F.3d at 315 (alterations in original) (quoting 42 U.S.C. § 2000e-3(a)).

CFEPA provides, in relevant part: "It shall be a discriminatory practice . . . [f]or any . . . employer . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint . . . ." Conn. Gen. Stat. § 46a-60(b)(4). "CFEPA retaliation claims are analyzed in the same manner as Title VII . . . retaliation claims." Kelley, 520 F. Supp. 2d. at 402. The court therefore analyzes the plaintiff's CFEPA retaliation claim under the Title VII standard.

"Retaliation claims under Title VII . . . are . . . analyzed pursuant to Title VII principles and the McDonnell Douglas burden-shifting evidentiary framework." Littlejohn, 795 F.3d at 315 (footnote omitted) (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

> To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a

> causal connection between the protected activity and the adverse employment action." Hicks, 593 F.3d at 164 (internal quotation marks omitted). As with our analysis of the disparate treatment claim, the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation.

Id. at 315-16.

With respect to the first element of a claim for retaliation, i.e., that the plaintiff participated in a protected activity, she must plausibly allege facts that show she participated in a protected activity.

> An employee's complaint may qualify as protected activity, satisfying the first element of this test, "so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001) (quotation marks omitted). And not just any law—the plaintiff is "required to have had a good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII." McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001); see also id. (vacating summary judgment where plaintiff's "belief that [defendant's] alleged sexual harassment violated Title VII was reasonable"). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." Galdieri-Ambrosini [v. Nat'l Realty & Dev. Corp.], 136 F.3d [276,] 292 [(2d Cir. 1998)].

Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14-15 (2d Cir. 2013)). A plaintiff "need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under [Title VII]." Summa, 708 F.3d at 126 (quoting

Galdieri-Ambrosini, 136 F.3d at 292).

With respect to the second element of a claim for retaliation, i.e., "that the defendant knew of the protected activity," the plaintiff must plausibly allege facts that the defendant knew of the protected activity. Littlejohn, 795 F.3d at 316. An employee's "complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII. Generalized complaints about a supervisor's treatment are insufficient." Taylor v. Dollar Tree Stores, No. 18-CV-1306-SJB, 2020 WL 2478663, at *14 (E.D.N.Y. May 13, 2020) (citing Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011)).

Defendant Applegreen did not engage in an unlawful employment practice related to Dixon's alleged sexual harassment of the plaintiff unless Applegreen exercised a high degree of control over Dixon's behavior and Applegreen's negligence permitted or facilitated Dixon's alleged discrimination. See Menaker, 935 F.3d at 39. To state a claim for retaliation, Collins must allege facts showing that she engaged in the protected activity of reporting Applegreen's alleged unlawful employment practice. The Amended Complaint alleges that the plaintiff informed her manager and her district manager of the harassment and also that both of them witnessed Dixon harassing her. The Amended Complaint also alleges that the plaintiff

-21-

called the defendant's corporate phone number three or four times to report Dixon's harassment. However, there is no factual allegation in the Amended Complaint that shows the plaintiff complained to defendant Applegreen that it was permitting or facilitating Dixon's harassment of her. Thus, there are no factual allegations that could support a conclusion that the plaintiff had a good faith reasonable belief that she was opposing an employment practice by Applegreen that was unlawful under Title VII.

Therefore, the plaintiff's claims for retaliation (Counts Two and Five) are being dismissed.[2]

## IV. CONCLUSION

For the reasons set forth above, the defendant's Motion to Dismiss (ECF No. 30) is hereby GRANTED. The Amended Complaint is dismissed. The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 18th day of March 2026, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge

---

[2] There is no need for the court to reach the question of whether the plaintiff has satisfied the causal-connection element of a retaliation claim. See Def. Mem. in Support of Mot. to Dismiss (ECF No. 30-1) at 12-14.

-22-